**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
RAYMOND CEFARRATI,              )
                                )
                Plaintiff,      )
                                )
        v.                      )  Civil Action No. 14-408 (EGS)
                                )
JBG PROPERTIES, INC., and       )
POTOMAC CREEK ASSOCIATES, LLC,  )
                                )
                Defendants.     )
_____)

## MEMORANDUM OPINION

Raymond Cefarrati brings this lawsuit alleging that defendants JBG Properties, Inc. ("JBG") and Potomac Creek Associates, LLC ("Potomac Creek") were unjustly enriched when he performed work beyond the scope of his job duties as Chief Engineer on a property-development project. Pending before the Court is plaintiff's motion to remand the case to the Superior Court of the District of Columbia and the defendants' motion to dismiss. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court **DENIES** plaintiff's motion to remand and **GRANTS** defendants' motion to dismiss.

## I.  Background

### A.  Factual Background

Mr. Cefarrati was employed by JBG as the Chief Engineer on a project to redevelop property in the Southwest quadrant of the

District of Columbia until his resignation on July 5, 2013.
Compl. ¶¶ 2, 3, 5. The property—to be redeveloped as the
L'Enfant Plaza Complex—was owned by Potomac Creek, a wholly
owned subsidiary of JBG. *Id.* ¶ 3. A collective-bargaining
agreement ("the CBA") between JBG and the International Union of
Operating Engineers Local 99-99A, AFL-CIO was in force during
the duration of Mr. Cefarrati's employment. *Id.* ¶ 6; *see* CBA,
ECF No. 4-1.

    1.   *The Collective Bargaining Agreement.*[1]

Section 1.5 of the CBA sets the scope of employment for the
Union's members:

> The jurisdiction of the Union shall extend over and
> include the operation, maintenance and repair of the
> following whenever such operation, maintenance or
> repair comes under the Employer's property management
> responsibility: (a) All boilers, their accessories
> and appurtenances. (b) All fired or unfired pressure
> vessels and vacuum systems. (c) All refrigeration and
> air-conditioning machinery and their associated
> equipment including maintenance and repair of cold
> storage spaces. (d) All plumbing and piping including
> water, gas, heating, steam and sanitation systems.
> (e) All electrical appliances and fixtures including

---

[1] Although Mr. Cefarrati did not attach a copy of the CBA to his
Complaint, he refers to it throughout his Complaint, Compl. ¶¶
6–8, and the defendants attached a copy to their motion to
dismiss. *See* CBA, ECF No. 4-1. The Court considers the CBA in
adjudicating the pending motions because: (1) the Court "may . .
. consider material outside of the pleadings in its effort to
determine whether it has jurisdiction," *Buaiz v. United States*,
471 F. Supp. 2d 129, 134 (D.D.C. 2007) (quotation marks and
alteration omitted), and (2) the Complaint "necessarily relies"
on the CBA by "quot[ing] from and discuss[ing] it extensively."
*W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 149 (D.D.C.
2013).

> lamping. (f) All emergency power equipment. (g) All
> electric motors, generators, circuits and switchgear.
> (h) All machinery and equipment used in the
> production and for the health and comfort of the
> Employer's business and personnel. (i) Any and all
> equipment under the supervision of the Chief
> Engineer.

CBA, ECF No. 4-1 § 1.5.

The Chief Engineer has "complete charge of all employees at a given location covered under this collective bargaining unit." *Id.* § 1.6(a); *see also id.* § 4.2 (the "Chief Engineer shall have charge of and be responsible directly to his/her Employer or designated assistant only for the proper installation, operation, care, maintenance, and repairs to the plant and all additions thereto"). The Chief Engineer is also responsible for issuing "orders and instructions for engine room, boiler room, mechanical repairs and maintenance work" and for "hir[ing] and discharg[ing] all other help covered by [the CBA]." *Id.* § 4.1.

The CBA also contains provisions regarding its own scope. It provides that "[t]he Employer shall not enter into any agreement with any employee covered by this Agreement, the terms of which conflict with the terms of this Agreement." *Id.* § 4.5. The CBA also "embodies the entire Agreement between the Employer and the Union . . . . No provision shall be construed in any manner so as to restrict the Employer from the complete operation and management of his/her business and plants or in the direction of the working forces." *Id.* § 4.15.

Finally, the Agreement specifies the procedures for addressing any grievances that may arise. *See id.* §§ 6.2, 6.3. First, "[a]ll grievances shall be presented in writing to Human Resources as soon as practical after the occurrence." *Id.* § 6.2. Step 1 of the grievance process entails a "meeting . . . between the Employer's Representative(s) and the Shop Steward." *Id.* A "written reply to the grievance" is then produced by the Employer. *Id.* "If this reply is unsatisfactory, the Shop Steward may appeal the decision to Step 2." *Id.* Step 2 consists of "[a] meeting . . . between the Employer's Representative(s) and the Business Representative or a designated representative of the Union." *Id.* Afterwards, "[t]he Employer shall make a reply to the Union in writing." *Id.* If these steps are unsuccessful, "either party may . . . refer the matter to binding arbitration." *Id.* § 6.3.

   *2.   Mr. Cefarrati's Allegations.*

Mr. Cefarrati alleges that he engaged in "activities [that] were beyond the scope of [his] job as Chief Operating Engineer and constituted a *de facto* new job." Compl. ¶ 10; *see also id.* ¶ 15 ("Plaintiff's activities were in excess of, and different in kind from, his job as Chief Operating Engineer and required hundreds of hours of work in addition to his service as Chief Operating Engineer."). Such activities included "attend[ing] numerous meetings with parties involved in the demolition,

redevelopment and renovation work"; "escort[ing] interested parties through the existing Complex to help them understand the 'as built' condition of the premises"; "inspect[ing] finished work"; and "undert[aking] numerous other activities to ensure that the redevelopment and renovation of the Complex went smoothly." *Id.* Mr. Cefarrati further alleges that these activities substantially benefited the defendants. *See id.* ¶¶ 11-14. In sum, Mr. Cefarrati claims, "[d]efendants saved many thousands of dollars they would have spent in attempting sub-optimal, and upon occasion, infeasible approaches to the redevelopment and renovation." *Id.* ¶ 16.

In light of this work allegedly performed beyond the scope of his employment, Mr. Cefarrati "informed Defendants that he believed he was being required to perform work that was in excess of, and different in kind from, his duties as Chief Operating Engineer and that fairness required that he receive appropriate compensation" for this additional work. *Id.* ¶ 17. The defendants "failed to provide such compensation," *id.*, and Mr. Cefarrati did not press the complaint any further.

## B. Procedural Background

Mr. Cefarrati filed suit for unjust enrichment in the Superior Court of the District of Columbia on February 25, 2014. Defendants removed the case to this Court on March 14, 2014. *See* Notice of Removal, ECF No. 1. That same day, they moved to

dismiss the case, arguing that plaintiff's claims for unjust enrichment are preempted by Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). *See* Mot. to Dismiss, ECF No. 4 at 8. Defendants further argue that plaintiff's claims should be dismissed because Mr. Cefarrati failed to exhaust the CBA-mandated grievance and arbitration procedures and, alternatively, because the claims are barred by the statute of limitations. *See id.* at 14, 16.

Mr. Cefarrati moved to remand the case to the Superior Court on March 21, 2014, arguing that there is no federal-question jurisdiction over his claims. *See* Mot. to Remand, ECF No. 5 at 3. Plaintiff filed his opposition to the Motion to Dismiss on April 16, 2014. *See* Opp. to Mot. to Dismiss, ECF No. 10. The defendants filed their combined opposition to the motion to remand and reply in support of their motion to dismiss on April 30, 2014. *See* Opp. to Mot. to Remand, ECF No. 11. Mr. Cefarrati filed his reply in support of his motion to remand on May 11, 2014. *See* Reply in Supp. of Mot. to Remand, ECF No. 13. The motions are now ripe for adjudication.

## II.  Standard of Review

### A.  Motion to Remand

The right to remove cases from state to federal court is derived from 28 U.S.C. § 1441. *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33,

36 (D.D.C. 2005). "The party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Id.* Further, "'the removal statute is to be strictly construed.'" *Id.* (quoting *Kopff v. World Research Grp., LLC*, 298 F. Supp. 2d 50, 54 (D.D.C. 2003)). Consequently, "the court must resolve any ambiguities concerning the propriety of removal in favor of remand." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003).

Defendants may only remove state-court actions that originally could have been filed in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Absent diversity of citizenship, federal-question jurisdiction is required to establish that the case could have originally been filed in federal court. *Caterpillar*, 482 U.S. at 392.

**B.    Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and alteration omitted). While detailed factual allegations are not necessary, a plaintiff must plead

enough facts "to raise a right to relief above the speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court must not accept inferences that are "unsupported by the facts set out in the complaint." *Id.* "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. Analysis

### A.  Motion to Remand

#### 1.  *Complete Preemption and the Well-Pleaded Complaint Rule.*

Federal-question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In deciding whether an action arises under federal law, the "well-pleaded complaint rule" dictates

that a case is removable only if the plaintiff's cause of action raises a federal question on its face. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983). "It is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

There is a limited exception to this rule, however. When the preemptive force of a federal statute is strong enough, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Bricklayers*, 366 F. Supp. 2d at 37 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)); *see also Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life*, 481 U.S. at 65) (Sometimes, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"). "Complete preemption," as this doctrine is known, "is a misleadingly named doctrine that applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim, no matter how careful the pleading." *Hughes v. United Air Lines, Inc.*, 634

F.3d 391, 393 (7th Cir. 2011)). "The doctrine of complete preemption that gives rise to federal subject-matter jurisdiction is separate and distinct from ordinary preemption . . . which can be raised as a defense to state law claims," the idea being that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *U.S. Airways Master Exec. Council v. Am. W. Master Exec. Council*, 525 F. Supp. 2d 127, 133 (D.D.C. 2007) (quotation marks omitted).

Congress has expressed such an intent in Section 301 of the LMRA. *See Bricklayers*, 366 F. Supp. 2d at 37 (citing *Metro. Life*, 481 U.S. at 63-64).[2] Section 301 embodies a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209

---

[2] Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

(1985); *see also Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). Providing a uniform federal forum for such claims helps "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). Section 301, therefore, "not only preempts state law but also authorizes removal of claims that purported to seek relief only under state law." *Bush v. Clark Const. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003); *see also Cephas v. MVM, Inc.*, 520 F.3d 480, 484 (D.C. Cir. 2008).

Complete preemption under Section 301 arises when resolution of a state-law claim hinges on the interpretation of a CBA. *See Caterpillar*, 482 U.S. at 394. This is not to say that any claim that touches on a CBA is preempted, only that preemption will arise "when resolution of a state-law claim is *substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract." *Lueck*, 471 U.S. at 220 (emphasis added). When this is the case, a state-law claim is completely preempted, regardless of how it is pleaded. "[A] plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Int'l B'hood of Teamsters v. Ass'n of Flight Attendants*, 663 F. Supp. 847, 851 (D.D.C. 1987).

*2.    Plaintiff's Claim Against JBG is Completely Preempted.*

Mr. Cefarrati brings a claim for unjust enrichment against JBG, alleging that JBG failed to compensate him for performing work "beyond the scope of [his] job as Chief Operating Engineer." Compl. ¶ 10. An unjust-enrichment claim is "a species of quasi contract that imposes, 'in the absence of an actual contract,' 'a duty upon one party to requite another in order to avoid the former's unjust enrichment, to permit recovery by contractual remedy in cases where, in fact, there is no contract.'" *Vila v. Inter-American Inv., Corp.*, 570 F.3d 274, 279–80 (D.C. Cir. 2009) (quoting *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 55 (D.C. 1992)) (alterations omitted). To prove his unjust-enrichment claim under D.C. law, Mr. Cefarrati will have to establish three elements: (1) his conferral of a benefit on JBG; (2) JBG's retention of that benefit; and (3) the injustice of JBG's retention of that benefit. *See, e.g.*, *JSC Transmashholding v. Miller*, No. 13-1836, 2014 WL 4960993, at *4 (D.D.C. Oct. 6, 2014); *Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs*, 965 F. Supp. 2d 119, 126 (D.D.C. 2013). Mr. Cefarrati seeks to establish these elements by asserting that he performed work for JBG that was outside the scope of his existing employment responsibilities.

To show this, Mr. Cefarrati would have to establish the scope of his preexisting employment responsibilities. On this point,

Mr. Cefarrati makes much of the fact that a claim for unjust enrichment presupposes the absence of an enforceable contract. *See* Mot. to Remand at 4. He is not wrong: "Unjust enrichment presuppose[s] that an express, enforceable contract is absent, therefore courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct." *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 170 (D.D.C. 2013) (quotation marks omitted). According to Mr. Cefarrati, the fact that unjust-enrichment claims cannot stand when a relevant contract exists means that the Court must ignore the CBA in this case. This is incorrect. The CBA is vital: It provides the baseline scope of employment for which Mr. Cefarrati admittedly was compensated. Establishing that baseline is a necessary precondition to deciding whether, and to what extent, Mr. Cefarrati performed work beyond the scope of his employment and thereby conferred a benefit on JBG that was unjustly retained.

Mr. Cefarrati appears to recognize the importance of the CBA because his Complaint relies solely on the CBA's terms to establish the baseline scope of his employment. *See* Compl. ¶¶ 6-8.[3] Mr. Cefarrati refers to Section 1.5, which describes the

---

[3] Mr. Cefarrati argues that his exclusive reliance on the CBA to describe the scope of his employment responsibilities was only the result of the CBA being a convenient point of reference. *See* Mot. to Remand at 6. He asserts that "job descriptions," "proof

general scope of jurisdiction for the Union. *Id.* ¶ 6. He also
notes that the Chief Operating Engineer position is described in
Section 4.2. *Id.* ¶ 7. As defendants note, additional portions of
the CBA may also be relevant. For example, Sections 1.6(a) and
4.1 provide further detail about the duties of the Chief
Engineer. *See* CBA, ECF No. 4-1 §§ 1.6(a), 4.1. Accordingly,
defining the scope of Mr. Cefarrati's employment *requires* the
interpretation of various provisions of the CBA.[4] This need to
interpret provisions of the CBA provides federal jurisdiction
because "the resolution of [the] state-law claim depends upon

---

of custom and practice between the parties or in the industry,"
and "many other sources" could also establish his employment
responsibilities. Opp. to Mot. to Dismiss at 4. Even if these
extrinsic sources existed and had been mentioned in the
Complaint, that would not render the terms of the CBA
irrelevant. Interpreting the CBA's terms would still be required
to assess Mr. Cefarrati's preexisting employment
responsibilities, especially because the CBA purports to
"embod[y] the entire Agreement between the Employer and the
Union," CBA § 4.15, and to prevent the employer from entering
into agreements contrary to its terms. *Id.* § 4.5.

[4] The Court, for example, would need to decide whether the
provisions of the CBA placing the Chief Engineer "in complete
charge of all employees at a given location covered under this
collective bargaining unit," CBA, ECF No. 4-1 § 1.6(a), and
mandating that the "Chief Engineer shall have charge of and be
responsible directly to his/her Employer . . . only for the
proper installation, operation, care, maintenance, and repairs
to the plant and all additions thereto," *id.* § 4.2, contemplate
responsibilities for "attend[ing] numerous meetings with parties
involved in the demolition, redevelopment and renovation work";
"inspect[ing] finished work"; and "undert[aking] numerous other
activities to ensure that the redevelopment and renovation of
the Complex went smoothly." Compl. ¶ 10.

the meaning of a collective-bargaining agreement." *Lingle*, 486
U.S. at 405-06.

Unjust-enrichment claims are often completely preempted.
Indeed, they "rest at bottom on the notion that plaintiffs have
not been paid the wages they are owed." *Cavallaro v. UMass Mem'l
Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012). This may
"depend[] importantly upon what the CBA provides." *Id.*
(interpretation of a CBA was necessary to resolve a claim that
an employer unlawfully failed to pay wages for work performed
during certain times of day because the court would need to
interpret the CBA to decide whether it provided for such
payments); *see also Shearon v. Comfort Tech Mech. Co.*, 936 F.
Supp. 2d 143, 154 (E.D.N.Y. 2013) (claim that the plaintiff
should have been paid union wages required the interpretation of
a CBA where the CBA defined what duties warranted the payment of
such wages). For example, in a lawsuit by a union that
represented airline employees against the employees' prior
union, an unjust-enrichment claim based upon the prior union's
failure to process certain employee grievances was completely
preempted because resolving the claim required the Court to
"define the scope of [the predecessor union's] obligations by
reviewing the applicable collective bargaining agreements."
*Ass'n of Flight Attendants*, 663 F. Supp. at 849, 852. Mr.
Cefarrati's claim that JBG retained the benefit of his work

beyond the scope of his employment without compensating him is similarly dependent upon an analysis of the CBA: namely, what the scope of his existing employment was.

Nor is this a case where the Court need only reference the CBA. *See, e.g.*, *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) ("The mere need to 'look to' the collective-bargaining agreement . . . is no reason to hold the state-law claim defeated by § 301."); *Lingle*, 486 U.S. at 410 ("As long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."). A court need not interpret a CBA when it is merely adjudicating an independent claim that is not based in the CBA at all. The Supreme Court in *Caterpillar*, for instance, found that there was no Section 301 jurisdiction over breach-of-contract claims that were based on separate, individual employment contracts. *See* 482 U.S. at 394–95; *see also Lingle*, 486 U.S. at 401, 407 (claim for retaliatory discharge under state law was not preempted, even though the relevant CBA provided its own remedy for retaliatory discharge, because neither the elements of the state-law claim nor any potential defenses "require[d] a court to interpret any term of a collective-bargaining agreement").

Plaintiff relies largely on the decision of another Judge of this Court in *Bricklayers*, 366 F. Supp. 2d 33. *See* Mot. to

Remand at 4–5. In that case, the court was unwilling to find Section 301 jurisdiction in a suit to enforce the payment of a bond that was executed pursuant to an employer's CBA-based obligation. *Bricklayers*, 366 F. Supp. 2d at 34. The bond was subsequently guaranteed by an insurance company and the union ultimately sued the insurance company to enforce the terms of the bond. *Id.* at 34–35. Because the dispute concerned a duty imposed by the terms of the bond, not the CBA, no interpretation of the CBA was required. *See id.* at 40-41. Mr. Cefarrati's claim, by contrast, requires the analysis of the scope of employment established by the CBA, so his claim is dependent upon the interpretation of the CBA and is completely preempted.[5]

---

[5] The other cases cited by Mr. Cefarrati are also readily distinguished. In *Cruse v. St. Vincent Hosp.*, 729 F. Supp. 2d 1269, 1276 (D.N.M. 2010), the court did not find Section 301 preemption of state-law claims—that failure to pay the plaintiff during a lunch break was illegal—which did not require the interpretation of a CBA because "[p]laintiffs need not refer to or rely on any provision in the Agreements to prevail." *LaRosa v. United Parcel Serv.*, 23 F. Supp. 2d 136, 146–47 (D. Mass. 1998) similarly involved a state-law claim that provided a right entirely independent of a CBA: a state antidiscrimination law which provided an independent cause of action for employment-discrimination and required only reference to job qualifications listed in a CBA. Finally, *Hernandez v. Harvard University*, No. 12-cv-11978, 2013 WL 1330842, at *3 (D. Mass. Mar. 28, 2013), involved a claim that an employer's failure to remit to employees the proceeds from a service charge imposed on patrons violated a state law. Although the defendant asserted that adjudicating the dispute would require the interpretation of the CBA applicable to the workers who sought compensation, the court disagreed because "[t]he dispute . . . concerns amounts allegedly owed in the form of gratuities . . . a form of compensation wholly extraneous to the CBA." *Id.* at *2. Unlike

*3. The Court Has Jurisdiction Over Plaintiff's Claim
       Against Potomac Creek.*

The parties dispute whether plaintiff's unjust-enrichment
claim against Potomac Creek is similarly subject to complete
preemption. Plaintiff argues that the Court lacks jurisdiction
over that claim "because Potomac Creek is not a party to the
CBA." Mot. to Remand at 4. This argument implicates a split
among the Circuits over the applicability of Section 301's
complete preemption to claims against non-signatories. *See Int'l
Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977
F.2d 895, 897 (4th Cir. 1992) (cataloguing the Circuit split).
One Judge of this Court has indicated that complete preemption
should not apply to such claims. *See Bricklayers*, 366 F. Supp.
2d at 42 (relying on the fact that the defendant was "not a
party to" a CBA to find that the claim against it was not
completely preempted by Section 301).

The Court need not address this split, however, because
plaintiff's claim against JBG was properly removed. As the First
Circuit held, when at least one claim is independently removable
as a Section 301 claim, "even the claims not independently
removable come within the supplemental jurisdiction of the

_____

the claims in these cases, Mr. Cefarrati's unjust-enrichment
claim may succeed only upon first establishing the baseline
scope of employment for which he has already been compensated,
which must be established by interpreting various provisions of
the CBA.

18

district court." *Cavallaro*, 678 F.3d at 5. A decision between the "minimum reading" and the "broader reading" of complete preemption is therefore unnecessary: "either way the district court [has] jurisdiction of the entire case." *Id.* at 5-6. Plaintiff's claim against Potomac Creek is based on the exact same case or controversy as his claim against JBG—Plaintiff, after all, has not alleged any material difference between Potomac Creek and JBG. Accordingly, the claim against Potomac Creek is properly before this Court pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

**B.    Motion to Dismiss**

Having found that the case was properly removed, the Court must also resolve defendants' motion to dismiss. Defendants argue that plaintiff's claims are subject to dismissal in two distinct ways. First, they rely on the doctrine of defensive preemption. Second, they assert that even if the Court recasts the claims as Section 301 claims, those claims were not properly exhausted and are barred by the statute of limitations.

> *1.    Plaintiff's Claims Must Be Dismissed Under the Doctrine of Defensive Preemption.*

Complete preemption under Section 301 functions to permit removal to federal court, while defensive preemption may also arise to bar the litigation of state-law claims when the claim "requires interpreting the terms of a labor contract." *Gray v.*

*Grove Mfg. Co.*, 971 F. Supp. 78, 84 (E.D.N.Y. 1997); *see also Covenant Coal*, 977 F.2d at 899 (Section 301 provides for defensive preemption when the "state cause of action would require a court to interpret the collective bargaining agreements."). These concepts, while related, are distinct: "[C]omplete preemption does not represent merely a difference in the scope of the preemption of a state cause of action by federal law; rather, it is a difference in kind." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.2 (4th ed. 2014); *see also Gray*, 971 F. Supp. at 81 ("While LMRA pre-emption and jurisdiction are often subject to similar analysis, lack of jurisdiction does not preclude pre-emption, and pre-emption does not necessarily imply a federal claim.").

The test for defensive preemption under Section 301 is largely identical to that for complete preemption. *See, e.g. Lueck*, 471 U.S. at 220 (a state-law claim that is dependent upon the interpretation of a CBA "must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law"). The difference is that although many courts have held that Section 301 *jurisdiction* does not exist over state-law claims against non-signatories to a CBA, courts have acknowledged that Section 301 *defensive preemption* may still be raised to dismiss such claims. *See Covenant Coal*, 977 F.2d at 899; *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894,

901-02 (S.D. Ohio 2007); *Gray*, 971 F. Supp. at 83. Defendants may therefore invoke defensive preemption to dismiss the state-law unjust-enrichment claims because resolution of plaintiff's claims would necessarily require interpretation of the CBA for the same reasons that the claim against JBG is completely preempted. *See supra* Part III.A.2.

    2.   *If Plaintiff's Claims are Recast as Section 301 Claims, they Must Be Dismissed for Failure to Exhaust.*

Even if the Court were to rely on the complete-preemption doctrine to recast plaintiff's claims as Section 301 claims, those claims would still be subject to dismissal because Mr. Cefarrati failed to exhaust the grievance procedures provided by the CBA before coming to court. "Section 301 has been broadly interpreted to embody a 'national labor policy' that encourages 'private rather than judicial resolution of disputes arising over collective bargaining agreements.'" *Bush*, 267 F. Supp. 2d at 46 (quoting *Majewski v. B'Nai B'Rith Int'l*, 721 F.2d 823, 826 (D.C. Cir. 1983)). In view of this policy, "where the contract provides grievance and arbitration procedures, those procedures must first be exhausted." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987); *see also Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 434 (D.C. Cir. 1994). Failure to do so will result in dismissal of the claim.

*See, e.g., Chester v. Wash. Metro. Area Transit Auth.*, 335 F. Supp. 2d 57, 63 (D.D.C. 2004).

The CBA provides a three-step grievance and arbitration procedure. *See supra* at 4. Mr. Cefarrati's Complaint fails to allege any compliance with this process; rather, it alleges only that he informally mentioned "that he believed he was being required to perform work that was in excess of . . . his duties as Chief Operating Engineer." Compl. ¶ 17. The government asserted that Mr. Cefarrati did not allege compliance with the CBA's grievance procedures, Mot. to Dismiss at 12, and Mr. Cefarrati's failure to oppose that assertion concedes the issue. *See Inst. for Pol'y Studies v. U.S. Cent. Intelligence Agency*, 246 F.R.D. 380, 386 n.5 (D.D.C. 2007) ("[W]here a party files an opposition to a motion and addresses only certain arguments raised by the movant, this court routinely treats the unaddressed arguments as conceded."). Accordingly, Mr. Cefarrati's claim must be dismissed for failure to exhaust the CBA's grievance procedures.

Mr. Cefarrati's sole arguments as to why his failure to exhaust should not bar his claims are simply restatements of arguments raised in his motion to remand. He claims that he "is not asserting any right conferred by the CBA. Unjust enrichment claims exist entirely separate and apart from—and are inimical to—a written contract." Opp. to Mot. to Dismiss at 6. As this

Court noted, *supra* at 13, the fact that unjust-enrichment claims may exist only in the absence of a relevant contract does not permit this Court to ignore a relevant CBA. Plaintiff's related argument, that he is not raising a claim based upon the interpretation of a CBA and therefore is not subject to its grievance provisions, Opp. to Mot. to Dismiss at 6-7, has similarly been rejected in connection with his motion to remand. *See supra* Part III.A.2. Ultimately, the CBA's grievance procedures were available to Mr. Cefarrati and his failure to utilize them means that if his claims are recast as Section 301 claims, they must be dismissed.[6]

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** plaintiff's motion to remand and **GRANTS** defendants' motion to dismiss. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **November 6, 2014**

---

[6] Because the Court finds that plaintiff's claims are subject to dismissal for failure to exhaust, the Court need not address whether Mr. Cefarrati complied with the applicable statute of limitations.